STERLING BALDREE *v.* F. J. DAVENPORT. A. M. COLEMAN, Intervenor.

When an intervenor stands in the position of a plaintiff, in a petitory action, he will be bound to establish, by satisfactory evidence, a title to the property which he claims.

APPEAL from the District Court of the Parish of Morehouse, *Copley,* J. *McGuire* and *Ray,* for plaintiff. *Richardson* and *Newton,* for defendant.

*Parsons* and *Sharp,* for intervenor. It was an estate commencing *in presenti,* intended to be occupied *in futuro,* and upon the delivery of the deed, the whole estate passed at once from the grantor to the grantee, 2 Blackstone, 166, 167. 5 Humphrey's (Tenn.) Reports, 411. 7 R. R. 481. 12 R. R. 660.

In the ante-nuptial contract between *Ruth Baldree* and her husband, the power to make such disposition of her property, was expressly reserved, and the deed of gift being made in accordance therewith, is good. 2 Story's Eq. sec. 1388, 1390, and authorities there cited. 2 Roper on Husband and Wife, ch. 16, sec. 2, p. 102. *Youngblood* v. *Flagg,* 11 L. R. 341.

The court below erred, in admitting, on the trial, the deed purporting to be from *Ruth Baldree* to *Elizabeth Ruth Kelly,* for the slaves in controversy, which had been previously donated to *Eliza Waters* and her children, for the reasons set forth in intervenor's bills of exception. The signature of *Moses Waring,* one of the subscribing witnesses to the deed, was not sufficiently proven, nor that of the other witness; and, even had one, or both these signatures been established, without proving the signature of the donor, the deed was inadmissible. *Dismukes et al.* v. *Musgrove,* 7 N. S. 63. 7 M. R. 209. 9 L. R. 521. 2 Ann. 217. 11 L. R. 251. 3 R.R. 206. C. C. 2241.

As to its effect, the deed having been made in the State of Alabama, if such a deed was made at all, which is denied, was void, for the want of record, and could confer no title. Clay's Digest, p. 255. 2 sec. Statute of Frauds, 2 Ala. Reports, 684, 648. Moreover, it was made by a married woman, without the consent and authorization of her husband, and is, therefore, void. C. C. art. 1467. The only power reserved to her in her marriage settlement, to dispose of her separate estate, had been previously exercised and exhausted when she executed the deed to *Eliza Waters* and her children. The life estate reserved to her therein, was, at furthest, all that she could dispose of.

The deed of gift to *Eliza Waters,* and her issue, divested *Ruth Baldree* of the fee of the property conveyed; and, of course, the power to make a subsequent disposition, even if the former had not been declared irrevocable. The deed to *Elizabeth R. Kelly,* is, therefore, an absolute nullity, and even if it had been properly proven, could confer no greater right than the grantor had, at the time of making it, which was but a life estate, the ownership of the slaves having already been vested in the first-named grantees, *Eliza Waters* and her children. Jarman on Wills, 11, 13, ne. 1 Ala. Reports, 52. 13 Ala. Reports, 731. *Summerlin,* Adm'r., v. *Gibson et als.* 15 Ala. Reports, 411. 1 Domat lib. 27, tit. 2, sec. 1. C. C. art. 1454, 9. Porter's Ala. Reports, 649. *Graham* v. *Lambert,* 5 Humphrey, 595.

There can be no doubt but that the girl, *Mary,* was purchased with funds arising from the sale of *Austin,* who was one of the slaves mentioned in the deed of gift, to *Eliza Waters* and children; in fact, the decree of the chancery court at Hayneville, clearly recognizes this fact; and, if so, she forms as much a part of the trust estate, created by this deed, as any of the negroes named in it. Law Library 39, p. 131. 4 Kent, 306, and notes. 1 Johnson's ch. R. 450. 3 Howard's Supt. C. R. 405.

The deed of gift to *Eliza Waters* and her children, made in pursuance of the marriage settlement, and in accordance with the power reserved therein, perfected the settlement of the property previously made on *Eliza Waters* and her issue, after the death of the donor, and is valid. 2 Kent, 164, 170, 174. 2

Leigh 183. This power to dispose of her separate estate, was expressly reserved by *Ruth Baldree*, in the instrument creating it, and the disposition made, was in accordance therewith. The deed is therefore good. 1 John's ch. R. 450. 2 Wharton, 11. 10 Serg. and Rawle, 447. The law respecting marriage settlements in South Carolina, is understood to be essentially the same as in Pennsylvania, Virginia, North Carolina, and Kentucky. 4 Dallas, 304, 307.

The deed created a particular estate for life in *Ruth Baldree*, and a vested remainder in *Eliza Waters* and her issue, who held the fee, and to whom a legal and equitable seizin was given. 4 Kent, 201. 2 Blackstone, 164. *Williams v. Caston*, Strobharts' South Carolina Reports, 130. 7 Iredell, N. C. Reports, 123.

It was not a contingent interest; depended on no uncertain event, and *Eliza Waters* and her issue had a right to the immediate possession and enjoyment of the property conveyed, upon the death of *Ruth Baldree*, when the precedent estate ceased. 2 Blackstone, 168. 1 Strobhart South Carolina Reports, 442. 1 Branch, 64. 5 Alabama Reports, 5, 7, 8; and 1 Richardson's South Carolina, 161, 170. 11 John's cas. 91. 6 Peters, 68. 5 Mass. 535

This interest, then, being vested and determined, when the particular estate was created, the grantor, *Ruth Baldree*, holding a life estate, was without the power to make any subsequent disposition of the property, to *Elizabeth Ruth Kelly*, or any one else. 2 Blackstone, 166. 15 Ala. Rep. 406. 2 Ala. Rep. 648. 4 *Ib.* 158.

Such a deed is similar in its nature to a donation *inter vivos*, and when once perfected by delivery, the fee of the property conveyed vested absolutely in *Eliza Waters* and her issue, and the grantor could not then revoke it, even if it was not, by its terms, irrevocable. 1 Strobhart's South Carolina Reports, 48. *McCutchen v. McCutchen*, 9 Porter's Alabama Reports, 649. 2 Root, 383. 4 Watts and Serg. 221.

It may be urged that the property conveyed was never actually delivered to the grantee. This was not necessary, and could not be done during the life of *Ruth Baldree*, who had reserved to herself a life estate in it. A delivery of the deed was sufficient. 12 Alabama Reports, 29. 9 Alabama Reports, 144. 4 Alabama Reports, 158. 5 New Hampshire Reports, 71. 2 Root, 26. 15 Wend, 656.

It may be said that if intervenor's title to the slave, *Will*, is good, he being mentioned in the deed of gift, that he has shown no right to *Mary* and her children, who comprise the balance of the negroes in controversy. It is true that none of these last are named in the deed, but it is alleged that *Mary* was purchased with funds belonging to the trust estate, to wit, the proceeds of the sale of *Austin*, who was named in the deed; and, although *Allen W. Coleman*, who purchased *Mary* for *Mrs. Baldree*, took the deed in his own name, it was expressly stipulated that *Ruth Baldree* was to have a life estate in her, and that the girl was for her use.

It is a doctrine well established, both by reason and by the decisions of the courts of other States, that when property conveyed by a deed of trust, (as this was,) is sold, the proceeds of that property should be applied as provided in the deed. 9 Porter's Alabama Reports, 547.

In the purchase of *Mary*, A. W. *Coleman* acted merely as trustee, and property bought with trust funds, belongs to the *cestui que trust*, who was *Eliza Waters* and her children. 10 Alabama Reports, 400, 460, 151. 4 Porter's Alabama Reports, 27.

Having, as we think, shown that *Francis P. Coleman* is clearly entitled to the property, intervenor prays that the judgment of the district court be reversed, and that he be decreed to be the owner, and that he have judgment also for the hire of the same as prayed for in his original petition, with costs in both courts.

By the court:

SLIDELL, J. The intervenor stands in the position of plaintiff, in a petitory action, and is bound to establish, by satisfactory evidence, a title in his ward, for whom he claims.

As regards *Davenport*, who stands before us as a purchaser in good faith, we have no hesitation in saying, that the judgment ought not to be disturbed. For

there is no sufficient evidence as to the slaves in his possession, that their alleged mother, *Mary*, was purchased with funds arising from the sale of *Austin*, one of the slaves mentioned in the deed of gift to *Eliza Waters*. The decree in chancery, upon which the intervenor relies, to show that essential fact, does not distinctly so adjudge, and was interlocutory in its nature. Moreover, the testimony is quite loose as to the maternity of the slaves; and, indeed, the record is so complicated, that it is not clear what evidence was offered against *Davenport*.

As to the defendant, *Harriet Herbert*, we have found greater difficulty in coming to a conclusion. But, after considering the facts of the case, which are extremely complicated, and endeavoring to apply to them a jurisprudence with which we are not familiar, and upon which we must necessarily pronounce with great diffidence, we are unable to say that the intervenor has shown such title in his ward, as would justify us in changing the judgment rendered below, in any respect, except as to the slave named *Will*.

It is not improper to add, that the subject matter of this controversy was hitherto before a court of chancery, in Alabama, where the rights of the intervenor and *Harriet Herbert*, could have been considered by minds versed in the intricate doctrine of trusts, and marriage settlements, and safely adjudicated. But the intervenor abandoned that forum.

The slave *Will*, it seems, was mentioned in the marriage settlement, and as the minor appears to be one of the heirs of *Mrs. Baldree*, we have considered it equitable, under all the circumstances, to amend the judgment so as to leave his claim, as heir for the slave, open.

It is therefore decreed, that the judgments from which the intervenor has appealed, be affirmed, reserving only to said *Francis P. Coleman*, minor, the right to enforce, by any future action, whatever rights he may have as to the slave *Will*, as heir of *Ruth Baldree*, the cost of the appeal to be paid by *Harriet Herbert*.